Again, gentlemen, if you would just step up and identify yourself and at all times keep your voice loud and clear. The appellant will have 15 minutes. You can see we're not keeping track, but reserve a few minutes if you want for rebuttal. If you could just state your names for us. My name is Harry Lee. I'm here on behalf of Nicole Jackson, the plaintiff appellant in this case. And counsel. I'm Justin Power. I'm here on behalf of the appellee. I'm sorry, I can't hear your name. I'm Justin Power. Power, okay.  Whenever you're ready. May it please the court. This case involves a pool which coupled with the defendant's invitation to the people in the community to use that pool was an accident just waiting to happen. The pool in this case was, as the court I'm sure is aware, was an above ground pool. Let me just stop you. You have this nice little soft voice and this is a real big room and that's not going to pick up your voice. So a little bit, project a little bit more. I will definitely try to do that, Your Honor. The pool in this case, as I say, coupled with the invitation to the people in the community to use this pool was an accident waiting to happen. The pool, as I'm sure this court is aware, was an above ground pool, yet it had a dangerous condition in it which was not open and obvious. The dangerous condition was a deep end that had been created by digging under the pool and using an expanded liner to create a depth of 6 to 6 1⁄2 feet in the pool. Now, there was no notice whatsoever or any warning with respect to this deep end. There was no marking on the pool to indicate any difference in depth. The shallow end was 4 to 4 1⁄2 feet. The deep end was 6 to 6 1⁄2 feet. There was no rope or any other device separating the shallow end from the deep end, nor was there anything attached to the pool such as a ladder which might indicate to a user that there was a deeper end to the pool. In terms of signage, there were signs on both sides of the pool, but the signs were more than a bit misleading. One panel of the sign was a warning to not dive into the pool because of shallow water, and the other panel did not advise that there was a deep end. It warned against drowning in the pool and it advised it. It had a picture indicating that I assume a parent should be watching children in the pool because of this danger of drowning, but it did not indicate that the danger of drowning was due to this hidden deep end. Now, the invitation was very interesting in this case. The defendant invited members of the community to use the pool. Some of his neighbors, he said, he invited them to use the pool even when he wasn't present and even without his prior permission. The defendant knew that pursuant to this invitation, neighbors were using the pool for swimming to teach their young children how to swim, and one neighbor was using the pool to hold pool parties for his girl's softball team. In fact, he did so one to three times a year. The defendant also knew in this case that on at least one prior occasion, and perhaps two, a neighborhood child entered the pool unaccompanied by an adult. Now, the evidence in this case is that all of these various factors came into play on June the 28th of 2012. On that day, Christian, the deceased, and Gia Williams, the girl who lived next door and who was Christian's 11-year-old aunt and a playmate, Jacqueline, were playing in the backyard and they looked and they could see through a chain link fence, which was the only fence separating their backyard from the swimming pool, that there in fact was a girl's pool party, a softball team's pool party going on at the time. Gia got the permission of her mother to go over to the pool, and she walked through the gate, she walked through the unfenced front yard of the defendant, she walked back to the pool, the pool had no fencing around it, it had no gate around it, and she and Christian and her playmate Jacqueline entered the pool while there were still remnants of the girl's softball team in the pool. In addition, Gia said that there were three adults present in the pool at the time. What happened then was the last girl on the softball team left the pool, the adults left, and the children, as children often are, wanted to have one more swim. And during this one more swim, Jacqueline slipped into the deep end of the pool. Christian went over to help her, he was able to pull her back or bring her back into the shallow end, but he wasn't able to save himself, he slid into the deeper end and he drowned. Was there any evidence presented in response to the motion for summary judgment about these last facts that you just told us about? Yeah, it's all in the depositions which were attached to the... But the depositions didn't talk about this part of Jacqueline slipping into the deep end. Well, actually, the pleadings actually... Well, now we're at summary judgment stage. But, Your Honor, the answer for the pleading was an admission to that allegation. And the reason it was an admission, even though they alleged that there was insufficient information to respond to that particular allegation, they did not attach an affidavit to that effect. And Section 2-610B requires that if you're going to assert insufficient information as your response and if you're going to avoid what would be normally an admission to the allegation by not specifically denying it, you have to attach an affidavit. There is no affidavit attached to the answer in this case. So summary judgments are entered on the basis of the pleadings, the depositions, and the admissions on file. So the pleadings do come into play here at the summary judgment stage because there was an admission. Did you ever respond... Okay, I went through the pleadings on the summary judgment motion. In your first response to the motion for summary judgment, the arguments were that the defendant knew that the Christian wanted to swim. He went back in the house. He knew that the child would be unsupervised. And then you argued deliberate encounter and a violation of the code. So this deep-end issue was not raised at that point. That's correct, the latent defect issue. And then you did a motion to reconsider, and you said there that Christian's drowning while acting to save Jacqueline was not an expected risk. That's what was argued in the motion for reconsideration, yes. But again, there was no argument about a failure to warn or no argument as to the defective nature of the pool. So how do we reach these arguments? We reach these arguments because, as I stated in my reply brief, the movement has the initial burden of persuasion and production on summary judgment. And the movement in his motion for summary judgment included as attachments all of the depositions that contain this information. He also included all of the pleadings. But what information as to the defective nature of the pool? Well, the testimony of Thomas Krebschild. Thomas Krebschild is the person who testified as to the design of this particular pool. He testified that there was this liner in his above-ground pool that could be used to create a deep-end by digging under the pool and creating that deep-end. So it came through Thomas Krebschild's deposition. What about the fact that it was that defect that may have resulted in the drowning? Well, again, there are two facts that I think support that argument. The first fact is, of course, that Christian was found in the deep-end, drowned. The second fact is the admitted fact that... Is there evidence of that? Yes, there's absolute evidence because Thomas Krebschild dove in and pulled him out of the deep-end. That's clearly in the deposition. And in terms of what he was doing, it's the result of answering an allegation in the pleading by saying that there was insufficient information but not providing the affidavit, which is required. And again, something that I don't know that was raised to the trial court. No, but I want to say something about what was raised to the trial court and what the trial court considered here because this is de novo review. I think the court can absolutely review everything that the trial judge had in front of him and, in fact, reviewed and can disagree with his conclusion. If you look at the trial court's order in this case, the trial court specifically said that he reviewed the pleadings in this case, the briefs in this case, and, importantly, the exhibits in this case. Now, the exhibits in this case were the depositions. Okay, but the argument before him on the motion for summary judgment was whether or not this was open and obvious. That's correct. And there wasn't really any response that there was this defense that created a different kind of open and obvious issue. And so I'm having trouble with how we reach it. No, I understand. And that's why my initial argument is that the movement has the initial burden. Well, the initial burden, the defendant came in and said, look, this is a pool. It's a walk. There's water. It's open and obvious. The court recognized that it's an open and obvious danger of drowning. That was his argument, but he also included in his motion these submissions, Your Honor. He included these affidavits, which were depositions, which were contrary to that. But your response was no, he, well, the defendant would have known that Christian was going to go in this pool. And then there was a deliberate encounter argument and a violation of the code. Those two arguments are no longer being raised. That's correct, Your Honor. That's correct. Once again, I'm arguing on the basis of the initial burden on behalf of the movement, and I'm also arguing on behalf of what the trial judge indicated. He reviewed in this case in reaching his conclusion that it was an open and obvious condition. Now, if a trial judge indicates that he reviewed the exhibits and the pleadings in the case and he reached that conclusion, what I'm saying to this court is look at those pleadings, look at those depositions, and you'll see that those documents do not support the trial court's conclusion in this case. And that is what I believe is de novo review of a trial court's ruling in a case. Well, let's go to the cases that you cite. The Jackson case, the Jackson v. TLC case, I think is a very significant case. The latent defect was a plastic pipe that was in a man-made lake, and this 19-year-old young man dove into the deeper end of the lake, and he came up with spinal injuries. Do you think there's a difference, though, between diving and cases dealing with drowning? Well, not when you're dealing with a condition that is a hidden condition or an undisclosed condition. The drowning danger is the body of water. That's correct. Whereas diving is unknown deaths or conditions like you're saying. So I'm trying to also, you're going to have to help me with that analogy to the unfortunate, tragic issues of drowning. Well, the comparison is that both the man-made lake and the above-ground pool are bodies of water. With a man-made lake, you don't expect or anticipate diving into a body of water and perhaps coming into contact with a plastic pipe. Right. In an above-ground pool, you do not anticipate that above-ground pool, which from all outward appearances appears to have a certain height, has in fact a much greater height. And when you know that children are going to be using this pool, and certainly the defendant was well aware that a lot of the children in the neighborhood were in fact using this pool, and the deposition testimony in this case indicates that Christian was a kind of short 9-year-old, that is an awfully dangerous condition to not disclose. And as I said, there's absolutely nothing to disclose it in this case. Was his height put into evidence? Yes, Emily Portenga in her deposition testified to that effect. That he was short. That he was kind of short, and you'll see that site. Is that enough for us to know? Pardon me? Is that enough for us to know? No, no, no. When you consider the danger and the risk, there's obviously, if you know children are going to be there, and if one of the children who actually enters the pool happens to be a kind of short 9-year-old, don't you think that there should have been some notice, some warning to this community of people using the pool, that hey, there's a deep end in this pool that's 6 to 6 1⁄2 feet deep? That may mean nothing to an adult, although it may mean something to me, but it may mean nothing to a 6 to 6 1⁄2 foot adult, but to a 9-year-old boy, that's very, very significant. That is extremely significant. And there are children in this pool. There's testimony that the defendant was aware that neighbors were bringing their young children there to learn how to swim. What does that tell you about the age of the children who are going to be in this pool? So, you know, I think even if we say that this pool was an open and obvious danger, I think if you go through the traditional duty factors, the likelihood of injury, the reasonable foreseeability of injury in this case, I think those are pretty clear questions. I think there's clearly evidence to indicate that an injury was likely and that it was reasonably foreseeable that somebody like Christian would be entering this pool and would be coming into contact with this deep end. And in terms of the magnitude of the burden, what does a property owner need to do? Just simply say, no, this is my pool, this is my property, you can't come in. It is very simple. Unless you had an adult from your household. Well, now, DeGioia's testimony was that she spoke to Thomas Craigshell on the day of the incident and he indicated to her, if your mother says it's okay and if there's an adult present, you can use the pool. Now, Thomas Craigshell's testimony was, no, I told her that her adult had to be present and so did, I think, Mr. Portanga testify to that. But that is just an issue of fact. This is a summary judgment. She says this, they say that, that's an issue of fact in this case. Now, when we do that traditional duty analysis, what duty specifically are we supposed to analyze? Is it duty that he would go swimming unsupervised? Is it duty that he wouldn't appreciate the deep end? And if it's the latter, do we need expert testimony that the deep end issue caused the injury? Well, you know, this is, when you find someone, when you find a young boy at the bottom of a, or in the deep end of a pool drowned and you've got this admission that he was there saving another young girl who had slid into it, you know, I think that... I don't know if that's a good question because this is something new you're raising as to the pleading issue. Well, in my reply brief, when it was raised by counsel in his response brief, in my reply brief, I did address that. I'm sorry. But you're correct in saying that I did not take it a step further and say that no affidavit had been provided in this case. And the reason for that is in reviewing this case and in looking at a copy of the answer in this case, I noticed that there was no affidavit attached to it. But that's absolutely correct. Thank you. So, you know, I essentially covered everything I need to cover, you know, likelihood of injury, reasonable foreseeability of injury, magnitude of the burden, and adverse consequences. I mean, in terms of adverse consequence, the defendant's popularity may decrease by telling the people in the neighborhood that they no longer can use this pool, but what other consequence might there be? I mean, he's just being responsible for his own property. And that, I think, at a minimum, any property owner should be responsible for their own property. So I guess if the Court has no further questions, I'd just like to reserve a few minutes for rebuttal. Certainly. Thank you. Thank you. Good morning. Good morning. My name is Justin Power. I represent Thomas Critchfield, the FLE. I first want to address this issue of waiver, which I think is pretty important in this case. The policies behind waiver and why it's applied by appellate courts, I think, apply because for judicial economy and other reasons. I don't see it so much as a waiver issue as to what was the plaintiff's burden once he filed a summary judgment motion. I guess if you want to call it waiver. I just look at it more as a burden. Did you present enough for a burden to shift the plaintiff? Yes, I believe the defendant did. We presented evidence that the evidence was that the pool, the water in the pool, was in open and obvious condition. I don't think there's no dispute that Christian Reese fortunately drowned due to drowning. And on the other hand, there was no evidence presented at trial, at the trial level, about these hidden defects in the pool being causing or contributing to his drowning. But I believe that we did, the defendant did present enough evidence to then place the burden on the plaintiff to come forward. The court, I think the trial court recognized that in their memorandum order. And so there is evidence presented of that this was that he drowned because of the water in the pool and not because of these other things that were raised for the first time on appeal. And so I believe it's a waiver issue in the sense that it could have been addressed, both the quality of the evidence that they were relying on. I see that, that you didn't have a chance to respond to these arguments about the defects. Right, we did not. And it could have been addressed. The trial court could have been, could have had the opportunity to address this and decide whether there's a genuine issue of fact as to the characteristics which plaintiff says are causing it to be a hidden danger or defect. Counsel talked about the, what I believe was an unswerving statement summary that as to the conduct of the two people that were in the pool at the time. And in my brief, I mentioned in addition to the waiver argument, I think where 191 was violated by submitting this, this particular piece of evidence. I think the first time it was raised was in the motion to reconsider. That is that Christian Reese was trying to save Jacqueline Velez at the time. There was no admissible evidence that was presented at summary judgment as to what. We know that he was in the pool, obviously. But as to what he was doing, trying to do, any interaction with Jacqueline Velez before at the time that he drowned. There was no admissible evidence. As I think the court noted in questions of appellant's counsel, that was not raised at the trial level by admissible evidence. And. And for that matter, I don't believe that there was any admissible evidence as to what part of the pool. Christian Reese was when he started to have any type of problems that caused him to drown, whatever it might have been, other than the water itself. The fact of it is, it's a possible. This is only a possibility that the depth of the pool had anything to do with his drowning. That's purely a possibility. And that possibility wasn't even raised at the trial level. That's not enough for a jury to draw a reasonable inference that it caused or contributed to the drowning. The depth of the pool. There's testimony as to his relative height, but he's so much short. We don't know how tall he was. You sound like you're talking about the trial, which means that at the summary. I'm sorry. I'm sorry. I'm sorry about that. I didn't mean to confuse that in that respect. But at summary judgment, there was no evidence submitted about the conduct of the two people in the pool that could have. And it just bears on how these characteristics that are raised for the first time in appeal may have led to the drowning. And so I think that the reference to Christian Reese, what he was doing or trying to do with Jacqueline Bales at the time was was not raised at the trial court at summary judgment. And it shouldn't be. It should not be considered by the court here if for no other reason than that. What's submitted on appeal doesn't comply with Rule one ninety one. It's not sworn testimony. It's an unsworn statement summary. So after after the movement presented evidence that this was an open sufficient evidence, at least that the trial judge recognized sufficient evidence that this was an open and obvious condition, then the burden was on plaintiffs to, I believe, to come forward with some evidence to show that there was a genuine issue of fact that would that should defeat summary judgment. On appeal, defendant, I'm sorry, the appellant argues that there was a hidden defect in the pool that contributed to the drowning. I don't think there's any evidence aside from the water issue, which I believe should apply here. I don't think there's any evidence that there was a hidden defect that contributed to this unfortunate. I mean, we have facts that there was in there is a deep part of this pool, correct? I believe it's like a two foot difference. There is that there is evidence of how it's set up and there's no clear indication. If you're looking at it from the ground, it's a defense. We do have those facts. Yeah, that's true. We don't have an argument at the at the summary judgment stage that these characteristics contributed to the death. Correct. We do not get those facts by themselves. Again, you did you rate. Did you raise facts of my class in your motion for summary judgment? Yes. I mean, I made the argument that you might have done it. I don't recall. I did. I believe that the argument was made that there's no evidence that these characteristics of the pool that were mentioned. Again, that's part of the waiver argument because I really wasn't able to develop that argument. I think I may have raised as an alternative argument. But because of that, I believe that an issue, an argument that was not presented by by plaintiff, we weren't able to develop it as much as as it's being, I guess, as we're doing now. So that position in the evidence and your argument is there's no there's no evidence of approximate cause. There are such things as summary judgment motion to say the plaintiff's unable to meet a burden and then the burden shifts. Plaintiff. Correct. Yes. Did you do that? I think they did. Well, we did discuss approximate cause. That is that the depth of the pool and the lack of this dividing rope or something that that there is no cause. There is no testimonies to find approximate cause. And again, we did. We we we addressed that. But that argument was not was not raised at the trial level as far as the hidden defect. So I think I mean, I rest on a brief with regard to the case last cited. I think those cases rely on that by plaintiff. Talk about a clear, hidden defect where the issue of causation is really never even knowing comes up in any. Anybody who's reading the briefs, anyone, any of their minds, because in one case, I believe it's a therapy case. So the the decedent or the injured, the injured party dives into a pool and a shower area and strikes his head. And then in the other case cited, I believe it's the TLC case. The plaintiff strikes his head on a submerged pipe. And in both cases, it's there is some other condition beyond the water itself that causes the injury. So there's the case that I can't remember which one it is. But I decided that the pool has an unnatural, deep and I mean, an unnatural, deep portion. But in the middle of the pool, as opposed to the end. So it's not an object in the pool, but the design. Optical illusion. Yeah. Yeah. Right. That's in the Duffy versus Tolbert case. That is in that case. The deeper is in the middle as opposed to like one end or the other. And and again, there's an expert witness, expert testimony about how that. That's a trial. Right. Isn't it? Was that a summary judgment case or a trial? I believe it was. I believe it was a summary judgment. But I can't remember. I don't know, though. Don't don't worry about it. I'm going to certainly reread it. It was summary. Was it summary? It was. But it was reversed. It was. But it was reversed, I believe, because the court found that it was more than I'm saying. There was more than just like speculation that the expert testimony that the depth of the pool or the design of it may have contributed to the injury. And again, it was a diving. Yes. And the cases involving the drowning, except for the one case involving the cover, the one where the pool is covered. And I think a minor then falls into the water and is drowned. I think with the exception of that case and its name, that might be the TT case. All these other cases do. Do they recognize the open and obvious danger posed by water generally? And again, I think we've met our burden in showing that that's what the evidence shows was the cause of the death here. But not any of the other factors, I believe, that are raised by the appellant. There's no evidence that those were positive factors. You know, if it goes to a jury under those facts that they would be speculating just for what's in the record, speculating that these characteristics in any way contributed to this boy's death. So with respect to, I think the foreseeability analysis, I believe, is part and parcel of the courts, the appellate courts in Illinois, their recognition of the restatement sections dealing with landowner's liability. And granted, this case just deals, I believe, with just an exception to that under 343, that landowner is not liable for open and obvious conditions. But that foreseeability analysis, I think, is part of that, those three prongs that are in the restatement. That is, landowner has to know or should know the condition and then believe that the person encountering it is not going to realize the danger or its existence for different reasons. And the distraction, exception, and the deliberate encounter, I'm just raising those because foreseeability is always discussed in those factors. So I think the trial court did consider the dispute in foreseeability in ruling. It wasn't just left out of its analysis, which I think is kind of part of the appellant's argument here. Foreseeability was considered, and I think that it's, again, whether, and here the court did, I believe, address it directly, but even if it's not addressed directly, it's part of the analysis that the courts take when they look at the restatement 343, whether the landowner will expect that this person will not realize the danger. And the rules, the rules that Mr. Cribshaw had for the use of his pool, I think show that it was clear that he and the people that he was talking to, he recognized the need for an adult and he told the people about that. I don't think that there was any, it's not reasonably foreseeable on Mr. Cribshaw's part. But under these circumstances, under these circumstances, that child is going to swim unsupervised. And even, and I point you to Deja Williams' testimony that when these three adults leave, her testimony is that there are three adults present at the time, and when they leave, she realizes it's time for them to leave too. So from a reasonable person perspective, it's not reasonably, reasonably foreseeable that the children are going to swim unsupervised. So I think it's not foreseeable. Deja Williams recognizes they shouldn't be there. And so she tells them it's time for them to leave. So, but again, I think the foreseeability analysis is, it doesn't stop when it's found that it's an open and obvious condition necessarily, but it's part of the court's analysis in recognizing that something like fire or water is an open and obvious condition. It's therefore not foreseeable on the landowner's part. It's not reasonably foreseeable on the landowner's part that a person is going to encounter those dangers and not protect themselves. So, in conclusion, I believe that the evidence did support the court's finding of, finding a favored defendant, granting summary judgment on the basis that this pool presented an open and obvious danger, and that under the circumstances, Thomas Creek Shield did not owe a duty with respect to that particular open and obvious danger. So, and if you have any additional questions at this point. Thank you. All right. And then I'll stay on my brief as to any of the points that I didn't raise orally. Thank you. Thank you. With respect to the last point that was argued about it not being reasonably foreseeable that a child would be in the pool unsupervised, first response is, how would Mr. Kreigschild know that if he allowed people to use his pool when he was not home and not present? The second point, however, is that in the past there was an instance where a child from the neighborhood had entered the pool unaccompanied. Mr. Kreigschild learned about that after the fact. And there's perhaps another incident. It's unclear from the record whether the two incidents were one or whether they were separate incidents. But I think for purposes of summary judgment, perhaps there were two. I want to return to the pleadings because it seems to me that the issue of proximate cause has arisen here, even though it was not argued in the motion for summary judgment. Again, the point I'm making, Your Honor, is the pleadings clearly are part of the record in this case. They were clearly attached to the motion for summary judgment, and they were clearly considered by the trial court in this case. So again, the question is, on de novo review, can this court take another look at those pleadings and reach a different conclusion in this case? And that's the argument, and that's why those pleadings are very important. But in the summary, we also, when we look at the pleadings, we have to recognize that it's summary judgment, and the pleadings alone cannot sustain a party's burden. Well, with respect, if they're challenged, if they are properly challenged. But there is no denial of that allegation. And as I said, of the allegation that Christian was, Jacqueline Smith into the pool, and Christian saved her, but in the process, drowned in the deep end. But there is, again, no denial and no affidavit attached to the answer, which is a requirement of Section 2-610B of the code. And the only other point that I wanted to make is, Justice Lamkin asked about the Duffy case, and what is comparable in the Duffy case to this case is, in Duffy, there is an illusion created that there is a deep end at the end of the pool, rather than in the middle of the pool. And that illusion was a ladder that was placed close to the north end of the pool. Here, what the illusion is, is you have an above-ground pool, and the illusion created by an above-ground pool is that the water simply comes up from the base of the pool, which is visible from looking at the pool. There's no indication whatsoever that there's going to be a deep end because something has been dug out underneath the pool to create this deep end. Unless the Court has any other questions, I'd simply ask that the Court reverse some of the judgment in this case. Thank you. Thank you. Certainly, we'll take this case under advisement. Everyone have a nice afternoon, and we are going to stand and recess.